THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE MANILA ELECTRIC RAILROAD AND LIGHTING CORPORATION, Relator, *v.* WALTER H. KNAPP and Others, as Members of and Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, March 3, 1920.

Tax — taxation of foreign corporation — duty of corporation to disclose facts — presumption that tax is correct — assessment by State Tax Commission confirmed.

In tax cases the party challenging a statement or assessment must show that it is wrong, all reasonable intendments being in its favor, and if the facts relied upon on a review by certiorari are doubtful or ambiguous, and the situation not made fully plain, the relator loses by its failure to disclose the exact situation or by the inference that the facts are shown as fully and as favorably as its interests permit.

On certiorari to review the assessment of a foreign corporation under sections 181 and 182 of the Tax Law, it appeared among other things that the corporation was endowed with broad powers and authorized to hold and

sell bonds, securities and stocks of other corporations and that it owned all the capital stock of certain subsidiary corporations operating in the Philippine Islands and elsewhere and maintained in this State an agent and general manager of its business. On all the evidence, *held*, that on the case disclosed by the relator it cannot be said with any certainty that the tax assessed was wrong, and that the determination of the State Tax Commission should be confirmed.

COCHRANE and H. T. KELLOGG, JJ., dissent.

CERTIORARI issued out of the Supreme Court and attested on the 24th day of May, 1919, directed to Walter H. Knapp and others, as members of and constituting the State Tax Commission, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in confirming an account audited and stated against the relator for taxes under sections 181 and 182 of the Tax Law for the tax year beginning November 1, 1916. (See Tax Law, § 181, as amd. by Laws of 1915, chap. 317; since amd. by Laws of 1917, chap. 490; Tax Law, § 182, as amd. by Laws of 1916, chap. 333.)

*Cravath & Henderson* [*John Freeman Day,* of counsel], for the relator.

*Charles D. Newton, Attorney-General* [*C. T. Dawes, Deputy Attorney-General,* of counsel], for the respondents.

JOHN M. KELLOGG, P. J.:

The relator is a Connecticut corporation, with very broad powers. It was authorized by its certificate of incorporation to acquire, construct, lease, operate and maintain, in the city of Manila, in the Philippine Islands, and elsewhere, railroads, street railroads (except in Connecticut), electric light, power, gas, ice and cold storage plants; to acquire, own and dispose of franchises and concessions for such purposes; to hold and sell bonds, securities and stocks in any such corporations and " while owner of any such shares of stock to exercise all the rights, powers and privileges of ownership, including the right to vote thereon; to aid in any manner any corporation or association of which any bonds or other securities, obligations or evidences of indebtedness or stock are held by the corporation or in which the corporation shall have any interest, and to do any acts or things designed to protect, preserve, improve or

enhance the value of any such bonds or other securities, obligations or evidences of indebtedness or stock; to acquire, own, hold and dispose of all such real and personal property, and to carry on all such works and operations, as may be necessary or convenient for the transaction of its business and the exercise and accomplishment of the purposes and powers herein set forth."

In 1903 it contracted with the Manila Construction Company to issue to it $5,997,000 stock and $3,250,000 in bonds, in exchange for $3,000,000 of bonds of the Manila Electric Railroad and Light Company and $1,000,000 of the stock of the said company and other securities. In 1916 its report shows that it had $7,751,307.50 of stocks in the said Manila Company and in other subsidiary companies. The subsidiary companies were incorporated under the laws of New Jersey or Connecticut; the plants owned and operated by or for them were in Manila. The report of the relator, in the record, shows an average monthly bank and cash balance in New York city of $33,257.11; an average value of bonds and loans in New York of $3,594,000; that it had $126,071.68 in bills and accounts receivable which were payable in New York; that it had bills payable averaging $33,333.33, accounts payable $7,577.50 and other liabilities, aside from capital stock, $371,255.22. It appears that of its stock, which it was to transfer to the Manila Construction Company, it now owns $1,000,000. The report states that the only business carried on by the relator in the State of New York is the holding of directors' meetings and the payment of bond interest and dividends, which business is carried on from 43 Exchange Place, New York city. The only business which it does is in and from New York city. We quote from the record: " Q. Does the corporation have an arrangement with the J. G. White Management Corporation for managing the affairs of the corporation and its subsidiaries? A. Yes. Q. What is the nature of that arrangement? A. The corporation and its underlying companies entered into an arrangement with the J. G. White Management Corporation as its general managers and purchasing agent to furnish it with the necessary items to do business and to carry on whatever has to be done in New York and to furnish such offices as might be needed. Q. Does the corporation, that is the

People ex rel. Manila El. R. R. & L. Corp. *v.* Knapp.  135

App. Div.]          Third Department, March, 1920.

Manila Electric Railroad and Lighting Corporation, the Connecticut corporation, rent any office in New York? A. No. Q. So it simply has this arrangement by which its officers act under the direction of the J. G. White Management Corporation in New York city? A. Yes. * * * Q. Is it a fact that the business of this [relator's] company consists of financing these other corporations? A. The company controls these corporations and finances them."

In tax cases the party challenging a statement or assessment must show that it is wrong, all reasonable intendments being in its favor, and if the facts relied upon on a review by certiorari are doubtful or ambiguous, and the situation not made fully plain, the relator loses by its failure to disclose the exact situation or by the inference that the facts are shown as fully and as favorably as its interests permit. (*People ex rel. Burke* v. *Wells,* 184 N. Y. 275, 278; *People ex rel. Jamaica W. S. Co.* v. *Tax Comrs.,* 196 id. 39.) The history of the relator and its manner of doing business is such that it cannot be said with any certainty that the statement of the tax is wrong. It owns all the stock of its subsidiary companies. It does not appear whether those companies have any business offices anywhere aside from those of the relator. It is very probable that the relator is in effect managing and carrying them on pursuant to the authority given by its charter. The fact that the White Management Corporation is hired as general manager and purchasing agent necessarily implies that there is something to manage and something to purchase. According to the defendants' statement the relator purchases nothing except perhaps its stationery and has nothing to manage, as its dividends are declared by its directors and paid by its officers. Its officers receive no compensation. Apparently the business at Manila is managed and controlled and financed from the New York office by the White Management Corporation. That corporation is the agent of the relator, and its acts are the acts of the relator. Evidently relator's increase in stock holdings since 1903 has resulted from the financing of its subsidiary companies. The attempted explanation of its bills and accounts receivable in this State is not satisfactory, and it is difficult to see how a corporation transacting no business should have so large current liabilities and accounts and bills receivable.

The bonds of the Manila subsidiary owned by the corporation were used by it by depositing them with the Equitable Trust Company in New York city as security for an issue of its bonds. The fact that the relator now owns $1,000,000 of the stock which it transferred to the Manila Construction Company is not explained. All the facts may well have led the Commission to infer that the relator owned and controlled the Manila Construction Company and that all of the activities in Manila are the activities of the relator through its agent, the White Management Corporation.

It is apparent that the relator has attempted to understate the business carried on by it in this State and that through its agent it is carrying on a large business and employing large amounts of capital and is in effect performing in this State the substantial powers given it by its articles of incorporation. We cannot say that the determination is wrong, or if wrong in any extent to what extent it is subject to criticism. The determination, therefore, should be confirmed, with fifty dollars costs and disbursements.

All concur, except COCHRANE and H. T. KELLOGG, JJ., dissenting.

Determination confirmed, with fifty dollars costs and disbursements.